CALL v. WHARTON.

4-6788                                    162 S. W. 2d 916

Opinion delivered June 15, 1942.

*Buzbee, Harrison & Wright* and *Lee Miles,* for appellant.

*J. S. Abercrombie,* for appellee.

HOLT, J. Appellants, C. K. Call, Jr., and others, resident landowners in Oak Forest Subdivision, adjacent to the city of Little Rock, Arkansas, proceeding under the provisions of §§ 9495-9496 of Pope's Digest, filed petition in the Pulaski county court for annexation of the property described in their petition. Appellees, A. F. Wharton and others, answered the petition protesting annexation. Upon a hearing, the county court granted the petition and ordered annexation.

Appellees then filed petition in the Pulaski circuit court, third division, for review of the county court's action and sought to prevent annexation. In this petition appellees, among other things, alleged: "There is no question of fact. Petitioners do not claim to have a majority of the landowners of the said territory who live in Pulaski county, and remonstrants do not deny that the petition contains a slight majority of the resident landowners of said territory. The sufficiency of the number of legal voters living within the said territory is not questioned. The controversy is purely a question of law —remonstrants contend that the county court erred in its holding which permits a majority of the resident owners of the territory proposed for annexation to ignore the wishes of property owners of the territory who do not live therein but who do live in Pulaski county."

Appellants in their answer to appellees' petition in the circuit court admit, "as stated in the petition of the remonstrants, that no question of fact is presented in this controversy. The petition for annexation in the county court contained a majority of the resident property owners of the affected territory, but did not contain a majority of the landowners of the affected territory who live in Pulaski county; and the sufficiency of the number of legal voters living within the affected territory who signed the petition is conceded."

In addition to the allegations contained in the pleadings, the parties stipulated that the petition for the proposed annexation filed in the county court by appellants contained the signatures of a majority of the landowners residing in the affected territory, but did not contain a

majority of the landowners in the affected territory irrespective of their residence and did not contain a majority of the signatures of the landowners in the affected territory who live within Pulaski county.

Judgment was entered in the circuit court in favor of appellees (remonstrants) and this appeal followed.

The facts are not in dispute. The question presented here is one of law. Appellants present the issue in this language: "It is admitted that the annexation petition was signed by a majority of the resident qualified electors owning real estate in the affected territory. It is also admitted that a majority of the real estate owners residing in and out of the affected area did not sign the petition, but protested favorable action of the county court.

"If, under the language of §§ 9495-6, the resident electors who own real estate control in the annexation, this court will decide for appellants. If the majority of the owners of real estate in the area whether residing in or out of the area control, this court will decide for appellees."

The sections of Pope's Digest, *supra,* are as follows:

"Section 9495. Whenever a majority of the real estate owners of any part of a county, contiguous and adjoining any city or incorporated town, shall desire to be annexed to such city or town, they may apply by petition in writing to the county court of the county in which said city or town is situated and they reside, and shall name the person or persons authorized to act on behalf of the petitioners.

"Section 9496. When such petition shall be presented to said court, they shall cause the same to be filed, and like proceedings shall be had for the hearing thereof as is prescribed in §§ 9787 and 9788. After such hearings, if the court shall be satisfied that at least six qualified voters, having a freehold interest in the territory proposed to be annexed, actually reside within the limits prescribed in the petition, and that said petition has been signed by a majority of them; that the said limits have been accurately described, and an accurate map thereof made and filed, and that the prayer of the petition is

right and proper, and that said petition should be granted, then it shall make and indorse on said petition, an order, to the effect that the territory described may be annexed to, and become a part of the city or town named in said petition, which said order, shall be recorded by the clerk of the county."

In interpreting and construing the meaning of statutes, the guiding rule is very clearly announced by the late Judge HART in *Berry v. Sale*, 184 Ark. 655, 43 S. W. 2d 225, in this language: "This court has uniformly held that, in the construction and interpretation of statutes, the intention of the legislature is to be ascertained and given effect from the language of the act if that can be done. In doing this, each section is to be read in the light of every other section, and the object and purposes of the act are to be considered. *Miller v. Yell and Pope Bridge District*, 175 Ark. 314, 299 S. W. 15; and *Berry v. Cousart Bayou Drainage District*, 181 Ark. 974, 28 S. W. 2d 1060.

"The reason is that statutes are written to be understood by the people to whom they apply, and their words and phrases are considered and used in their plain and ordinary, as distinguished from their technical, meaning, where the language is plain and unambiguous. In such cases it is said that, where the intention of the legislature is clear from the words used, there is no room for construction, and no excuse for adding to or changing the meaning of the language employed."

We think it clear under the first section of the statute, *supra*, that when annexation is desired of any part of a county, contiguous to a city or incorporated town, the first step required is the filing of a petition with the county court, which petition must be signed by a majority of the real estate owners of the subdivision sought to be annexed and also signed by a majority of the real estate owners of the affected area who are residents within the county in which the municipality and subdivision are located.

After the preparation and filing of the petition, then under the terms of § 9496, when it is presented and heard

by the county court, and the court shall be satisfied that at least six qualified voters own property in the territory sought to be annexed and in addition reside within said territory, and it shall further find that a majority of the six resident landowners have signed the petition, and other conditions set out in the section complied with, it would be the duty of the court to grant the petition for annexation.

On the undisputed facts here, appellants constitute a majority of the resident landowners in the territory sought to be annexed, but do not constitute a majority of the landowners within the subdivision who live in Pulaski county. We think the judgment of the circuit court was correct, and accordingly it is affirmed.