Homer H. BLEVINS and Continental Insurance Co., Inc., Appellees,

v.

COMMERCIAL STANDARD INSURANCE COMPANIES, Appellant.

No. 76–1332.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1976.

Decided Nov. 16, 1976.

E. Lawrence Merriman, Texarkana, Tex., for appellant; David E. Hightower, Texarkana, Tex., on brief.

Henry Woods, Little Rock, Ark., for appellee, Homer H. Blevins.

Ralph R. Wilson, Little Rock, Ark., for appellee, Continental Insurance Co., Inc.

Before VAN OOSTERHOUT, Senior Circuit Judge, and BRIGHT and WEBSTER, Circuit Judges.

VAN OOSTERHOUT, Senior Circuit Judge.

In *Blevins v. Roy,* an unreported diversity case tried to the district court [1] sitting without a jury, Homer H. Blevins recovered a $75,000 judgment against Bonnie I. Roy, minor tortfeasor, and A. J. Roy, Bonnie's father, for personal injuries sustained by Blevins as a result of an Arkansas highway accident. That judgment was never satisfied.

In the present action, also an unreported diversity case tried to the district court [2] sitting without a jury, Blevins sought recovery on the $75,000 judgment, together with interest, costs, attorney's fees, and statutory penalty, from the Roys' alleged liability insurer, Commercial Standard Insurance Companies (Commercial), pursuant to Arkansas' direct action statute, Ark.Stat.

---

1. The Honorable John E. Miller, United States Senior District Judge for the Western District of Arkansas.

2. The Honorable Paul X Williams, Chief Judge, United States District Court for the Western District of Arkansas.

Ann. § 66–4001 (1966 Repl.)[3] Continental Insurance Company, Inc. (Continental), intervened in the district court on grounds hereinafter explained. Commercial appeals from a judgment rendered in favor of Blevins and Continental. There is no question but that Arkansas law controls the disposition of this appeal.

The accident which gave rise to this litigation involved vehicles driven by Blevins and Bonnie I. Roy, respectively. The vehicle driven by Bonnie, a 1970 Chevrolet, was owned by Harold Hendrix d/b/a Hendrix Motors and was insured by Commercial. Commercial's policy to Hendrix provided that any person using the 1970 Chevrolet with the permission of the named insured (Hendrix) and within the scope of that permission was an insured under the policy. In a ruling contested on appeal, the district court determined that Bonnie I. Roy was driving the 1970 Chevrolet with the permission of Hendrix at the time of the accident.

As already noted, Blevins, who was badly injured in the accident, first brought suit against the Roys. At that time the Roys contacted Continental, their own insurer. Continental's policy to the Roys provided coverage while the Roys were driving a car belonging to another, but the "drive other car" clause only provided coverage in excess of any other coverage applicable to the occurrence. Continental ultimately concluded that the primary insurer was Commercial, and it accordingly gave notice to Commercial, requesting that Commercial defend the Roys. Commercial refused and Continental made defense. On January 5, 1975, the judgment heretofore mentioned against the Roys in the amount of $75,000 was entered.

The present action on the $75,000 judgment was commenced by Blevins against Commercial on January 23, 1975. Continental was permitted to intervene and to seek to recover from Commercial the expenses—in the subsequently stipulated amount of $1,146.46[4]—it had incurred in defending the Roys.

Following trial in March, 1976, a memorandum opinion and judgment were filed in the district court on March 18, 1976. The district court ruled in favor of both Blevins and Continental. Blevins was awarded the $75,000 and, pursuant to Ark.Stat.Ann. § 66–3238 (1966 Repl.),[5] attorney's fees in the amount of $9,000 and a twelve percent penalty. Continental was awarded the $1,146.46.

Commercial raises the following contentions on appeal:

3. **Subrogation of injured person to right of insured.**—Any policy of insurance issued or delivered in this State indemnifying any person against any actual money loss sustained by such person for damages inflicted upon the property or person of another, shall contain a provision that such injured person, or his or her personal representative, shall be subrogated to the right of the insured named in such policy; and such injured person, or his or her personal representative, whether such provision is actually inserted in such policy or not, may maintain a direct cause of action against the insurer issuing such policy for the amount of the judgment rendered against such insured, not exceeding the amount of the policy, provided such judgment remains unsatisfied at the expiration of thirty (30) days from the serving of notice of entry of judgment upon the attorney for the insured or upon the insured or upon the insurer.

4. The $1,146.46 figure is the one contained in the judgment. Minor discrepancies appear in the record.

5. **Suits against insurers—Damages and attorney fees on loss claims.**—In all cases where loss occurs and the cargo, fire, marine, casualty, fidelity, surety, cyclone, tornado, life, health, accident, medical, hospital, or surgical benefit insurance company and fraternal benefit society or farmers' mutual aid association liable therefor shall fail to pay the same within the time specified in the policy, after demand made therefor, such person, firm, corporation and/or association shall be liable to pay the holder of such policy or his assigns, in addition to the amount of such loss, twelve per cent (12%) damages upon the amount of such loss, together with all reasonable attorneys' fees for the prosecution and collection of said loss; said attorney's fee to be taxed by the court where the same is heard on original action, by appeal or otherwise, and to be taxed up as a part of the costs therein and collected as other costs are, or may be by law collected; . . . .

I. Blevins was not entitled to maintain and recover under a direct action against Commercial pursuant to Ark.Stat.Ann. § 66–4001 in that a condition precedent to such action was not satisfied.

II. The judgment in *Blevins v. Roy* was procured by fraud, collusion or bad faith and was therefore not binding on Commercial.

III. Bonnie I. Roy was not an insured within the terms and coverages of Commercial's policy to Hendrix.

IV. Blevins was not entitled to recover attorney's fees and statutory penalty under Ark.Stat.Ann. § 66–3238.

V. Continental was not entitled to recover its legal expenses incurred in *Blevins v. Roy.*

We reject each of these contentions and affirm the trial court's judgment in all respects. We also direct that Blevins recover One Thousand Dollars ($1,000) from Commercial for attorney's fees incurred in this appeal.

### I.

Under Ark.Stat.Ann. § 66–4001, quoted in full *supra* note 3, an injured party holding a judgment against a tortfeasor may maintain a direct action against the tortfeasor's liability insurer "provided such judgment remains unsatisfied at the expiration of thirty (30) days from the serving of notice of entry of judgment upon the attorney for the insured or upon the insured or upon the insurer." Commercial's initial contention is that this provisional clause of § 66–4001, as interpreted by applicable Arkansas caselaw, requires that the injured party have caused a writ of execution to be issued against the tortfeasor and that the writ have been returned *nulla bona.* Commercial further argues that this alleged execution requirement is a condition precedent to the maintenance of a § 66–4001 direct action, that the requirement was not

here satisfied, and that the judgment below should accordingly be vacated.

The pertinent language of § 66–4001 is straightforward. The term "unsatisfied judgment" is not ambiguous, and it does not connote issuance of a writ of execution and return *nulla bona.* Nevertheless, Commercial argues that the Arkansas Supreme Court read the execution requirement into the predecessor statute of § 66–4001 and that, by implication, the Arkansas Supreme Court would now read the same requirement into § 66–4001 itself. The predecessor statute (Acts 1927, No. 196, § 2) was identical in substance to the present § 66–4001 (Acts 1959, No. 148, § 447), except that the predecessor statute did not contain the provisional clause of § 66–4001 quoted above. It was thus silent as to whether either an unsatisfied judgment or a writ of execution returned *nulla bona* was a condition precedent to a direct action. In 1959 the predecessor statute was repealed and the present statute enacted.

The district court below concluded as follows:[6]

Prior to the 1959 enactment, section 2 of Act 196 of 1927 (the predecessor of Ark. Stat.Ann. 66–4001) made no mention of whether the judgment against the tortfeasor had to be satisfied or whether the issuance of a writ of execution was necessary. Because section 2 was silent on the subject, the issuance of a writ and its return *nulla bona* were read into section 2 as requirements. *Commercial Casualty Insurance Company v. Leonard,* 210 Ark. 575, 196 S.W.2d 919 (1946); *Universal Automobile Insurance Company v. Denton,* 185 Ark. 899, 50 S.W.2d 592 (1932); *Spann v. Commercial Standard Insurance Company,* 82 F.2d 593 (8th Cir. 1936). The Court finds that by adding the language in the current statute, the legislature changed the effect of the earlier act, making it clear that the only prerequisite to a direct action is that the judgment

---

**6.** The district court's memorandum opinion from which the above excerpt is taken mistakenly refers to section "b" of the 1927 Act rather than to section "2" of the 1927 Act. The emendation in the excerpt as reproduced above is ours.

against the tortfeasor remain unsatisfied for a period of thirty days.

We cannot say with certainty, of course, that the Arkansas Supreme Court would agree with the reasoning and conclusion of the district court. We can say with certainty, however, that the district court's reasoning and conclusion were permissibly sound under Arkansas law. It is clear that the Arkansas legislature considered conditions precedent to a direct action when it enacted the present statute in 1959, since it did require as condition precedent that a judgment remain unsatisfied for thirty days. It is equally clear that the Arkansas legislature did not in terms require that a writ of execution be returned *nulla bona*. The district court's inference that the Arkansas legislature intended to abrogate the judicially created execution requirement is accordingly a natural, if not inevitable, one. Nor do any of the cases cited by Commercial persuade us to the contrary. Rather, the cited cases convince us that the question is unresolved, since none of the cases decided under the present statute either hold that the execution requirement persists or even seriously consider the issue.

■■■ In a diversity case, the interpretation of the district court on a question of state law is entitled to great deference. *See Ideal Plumbing Co. v. Benco, Inc.*, 529 F.2d 972, 979 (8th Cir.1976). We affirm the conclusion of the district court that Ark. Stat.Ann. § 66–4001 does not require the issuance of a writ of execution and its return *nulla bona*.[7]

## II–III.

Commercial also contends that the judgment obtained by Blevins in *Blevins v. Roy* was procured by fraud, collusion or bad faith and that Commercial for this reason is not bound by that judgment under res judicata principles. Commercial, relying primarily on the fact that the Roys were not present at the *Blevins v. Roy* trial, contends in essence that there was no meaningful

determination of the Roys' liability to Blevins. The contention is a serious one. It is, however, conclusively negated on the present record.

The only witness called by Commercial on this phase of the case was Sam Laser, the attorney for Continental in both the *Blevins v. Roy* proceedings and the proceedings below. Laser testified that in the *Blevins v. Roy* proceedings he worked with John Wilson, the Roys' personal attorney. He further testified that he had informed Wilson that in his opinion there was no need for the Roys to be present at trial. He explained the basis of this opinion as follows:

> [I]t was my feeling that nothing they could say could have any probative value toward mitigation of the plaintiff's case. To the contrary it was a little bit of an aggravated case of liability and it seemed to me that as an attorney based on my experience in similar instances that the less they had to say and the less participation of their part in the case the better off it would be. The liability in my judgment was very clear, bordered on the sort of case that a trier of fact while there is no allegation of wilful, wanton misconduct or claim for punitive damages it is the sort of case in which you know a trier of fact would tend to assess punitive damages in the form or name of actual damages because of the way it happened involving youngsters who were very clearly negligent in the face of adult, mature profession drivers and in the face of witnesses who did all he could, in an humanitarian effort went into a ditch risking possible injury to himself just to avoid a head-on collision or run over the youngsters perhaps to their very possible serious injury or their deaths. They did not have any mitigating circumstances on the liability question so far as I was concerned.

We see little point in further extractions from Laser's testimony. His comments upon the extent of injuries sustained by

---

7. We note that the *complaint* in this action was filed fewer than thirty days after the *Blevins v. Roy* judgment was entered. Commercial raises

no objection in this respect, and we address none.

Blevins in the accident were virtually as convincing as the comments quoted above on the liability issue. None of his testimony was controverted. While it is apparently true that Laser collaborated with Wilson, the Roys' attorney, this was entirely proper, since Continental and its admitted insureds, the Roys, were aligned in interest against plaintiff Blevins. There is not even a hint that either Laser or Wilson collaborated in any impermissible way with Blevins or his attorney. The record thus indicates that the case was submitted to Judge Miller on nothing other than the soundest professional advice on the part of all attorneys concerned.

■ The district court below concluded as follows:

This Court finds that there was no fraud surrounding the judgment entered against the Roys in T–74–C–18 [*Blevins v. Roy*]. The case was filed in the usual way and service was obtained on the defendants Roy. When Commercial refused to defend, Continental defended the case against the Roys and the Roys, in addition, procured private counsel. Although the Roys were not present when the case was heard before the Honorable John E. Miller . . ., we find this fact insufficient proof of fraud. In the earlier suit, the evidence showed clear negligence on the part of Miss Roy and extensive damages to the plaintiff. Commercial has failed to show that the evidence presented earlier was not representative of the true situation and it does not appear that Commercial could make such a showing. In the absence of fraud or collusion, the judgment in T–74–C–18 will be considered sufficient to support a direct action under Arkansas law.

These factfindings are subject to the clearly erroneous standard of Fed.R.Civ.P. 52(a). Far from thinking them clearly erroneous, we doubt whether the district court could possibly have concluded other than it did on the present record.

■ Commercial next contends that the trial court erred in holding that Bonnie I. Roy was an insured under Commercial's policy to Harold Hendrix, the owner of the automobile driven by Bonnie at the time of the accident. Commercial relies on an affidavit of Hendrix, introduced in evidence at the trial below, to the effect that Hendrix loaned the automobile to Bonnie's parents with the express restriction that the automobile not be used by the Roy children. Hendrix' statement was flatly contradicted by Mrs. Roy, Bonnie's mother, who testified that she had no recollection of such a restriction and that, had such a restriction been given, she would not have allowed Bonnie to use the car. The district court found as a fact that no restriction was made. That determination rested largely on the credibility of the witnesses and is supported by substantial evidence. We cannot say it was clearly erroneous. Rule 52(a), Fed.R.Civ.P.

IV–V.

■ Commercial next contends that the district court erroneously awarded Blevins attorney's fees and statutory penalty under Ark.Stat. Ann. § 66–3238, quoted *supra* note 5. Specifically, Commercial contends that Blevins is not a "holder" of Commercial's policy under the statute. Commercial properly admits that *Trinity Universal Insurance Co. v. Stobaugh,* 239 Ark. 746 and 982, 395 S.W.2d 24, 28 (1965), holds contrary to its position. It argues, however, that the *Stobaugh* decision summarily treated the issue "without favoring the Bench and the Bar with a definitive holding." The *Erie* doctrine left the district court, and leaves us, with no authority to re-examine the result reached by the Arkansas Supreme Court. We are unimpressed with Commercial's additional argument that dicta in *Equitable Life Assurance Society v. Rummell,* 257 Ark. 90, 514 S.W.2d 224, 225 (1974), indicates that the Arkansas Supreme Court would overrule *Stobaugh.* Under *Stobaugh,* the district court properly awarded Blevins attorney's fees and statutory penalty.

■ Blevins requests that he be awarded attorney's fees on appeal and suggests that

one thousand dollars is a reasonable fee. Section 66–3238 specifically authorizes attorney's fees on appeal and the amount requested is entirely reasonable. We award Blevins the one thousand dollars.

Finally, Commercial contends that the district court erroneously awarded Continental the expenses Continental incurred in defending the Roys in the prior suit. The expenses consisted largely of attorney's fees. Commercial alleges that Continental had an independent contractual duty to defend the Roys, that Commercial had no contractual or other duty to Continental, that Continental could not have been subrogated to the rights of the Roys since the contested expenses were not paid by the Roys, that Continental never satisfied any part of Blevins' judgment against the Roys, and that for any or all of these reasons Continental had no claim against Commercial.

It is clear that Continental's longstanding position that Commercial was the primary, and Continental the excess, insurer was ultimately vindicated by the decision of the district court below, now affirmed, that Blevins could recover from Commercial on the principal claim. In addition, the record establishes, and the district court found, that Continental made timely demand that Commercial defend the Roys, that Commercial refused, and that Continental itself incurred the contested expenses in defending the Roys.[8] This case accordingly presents the pristine legal question whether, under Arkansas law, an excess insurer may recover from a primary insurer the legal expenses, including attorney's fees, incurred in defending an insured, where the primary insurer has refused to make defense itself after proper demand has been made. The district court, relying on *Trinity Universal Insurance Company v. State Farm Mutual Automobile Insurance Company,* 246 Ark. 1021, 441 S.W.2d 95 (1969), held that the excess carrier could so recover.

*Trinity* considered whether a complaint filed in Arkansas state court stated a claim for relief. The complaint alleged that the plaintiff (Trinity) was an excess carrier, that it had made demand of two primary insurers to defend claims against the insured, that each of the primary insurers had refused, and that Trinity had in good faith settled the claims for $9,700, obtaining from the claimants releases as to all three insurers. The complaint sought judgment for $9,700, plus interest and "costs", from each of the alleged primary insurers. The trial court sustained a demurrer to the complaint. The Arkansas Supreme Court, reversing, held that Trinity, the excess carrier under the allegations of the complaint, was subrogated to the rights of the insured against the two defendants, primary insurers under the allegations of the complaint, and that the complaint accordingly did state a claim for relief.

*Trinity* is thus a definitive holding of the Arkansas Supreme Court that an excess insurer is subrogated to the rights of the insured against the primary insurer where the excess carrier acts on behalf of the insured after the primary insurer has refused to do so. The issue here is not, as the parties seem to suggest, whether the word "costs" in the complaint in *Trinity* was thought by the Arkansas Supreme Court to include attorney's fees. Although Commercial is correct in observing that the word "costs" in such contexts normally does not include attorney's fees, this observation establishes no more than that Trinity was not seeking to recover whatever attorney's fees it might have incurred in effecting the settlement there pleaded. Trinity held only that a claim was stated; it did not address in any manner what items might be recoverable if the allegations of the complaint proved true. It certainly did not address what items might be recoverable under a complaint in terms seeking attorney's fees incurred in defense of the insureds.

---

8. Continental admitted coverage, albeit excess coverage, to the Roys from the outset, and the expenses incurred were, as found by the district court, expenses in defense of the Roys.

We would of course have an entirely different issue had the expenses incurred been in defense of Continental alone, *e. g.,* had Continental taken a position adverse to that of the Roys.

■ *Trinity* certainly entails that Continental would have been subrogated to the rights of the Roys against Commercial to the extent that it might have paid any part of the *Blevins v. Roy* judgment. Once this much is recognized, the real issue here becomes whether the subrogation right conferred in *Trinity* was intended to include the attorney's fees here contested. We agree with the district court that it was. We perceive no principled distinction, and clearly none is suggested in *Trinity* itself, between subrogation to the principal claim and subrogation to the kind of incidental claim here contested. It is clear that, had the Roys defended themselves in *Blevins v. Roy,* the Roys could have recovered their legal expenses from Commercial, since Commercial had a contractual duty to defend. Under our reading of *Trinity,* accordingly, when Continental, the excess insurer, performed this duty, it became subrogated to the rights of the Roys to recover the legal expenses from Commercial.

The objections raised by Commercial are not persuasive. Commercial suggests that Continental had an independent contractual duty to defend the Roys. Trinity, too, had an independent contractual duty to defend its insured. The Arkansas court nonetheless held subrogation principles applicable. Commercial suggests that it had no duty to Continental. It could as easily be said that the primary insurers in *Trinity* had no duty to Trinity. The Arkansas court nonetheless held subrogation principles applicable. Commercial suggests that there can be no subrogation here since the Roys did not incur the contested legal expenses themselves and since the rights of a subrogee can rise no higher than the rights of the subrogor. It is equally true that Trinity's insured paid no settlement. The Arkansas court nonetheless held subrogation principles applicable.

The only remaining argument raised by Commercial is that Continental paid no part of the *Blevins v. Roy* judgment. While this is true, and while Trinity did pay its insured's principal claim, in the form of a settlement, Commercial does not explain how it follows that the legal expenses, which Continental did pay, should not be recoverable. We perceive little sense in a prerequisite to recovering legal expenses of also recovering the principal claim.

As a matter of policy, we think the result here reached is sound. As stated by the Fourth Circuit:

> Losses should not fall irrevocably upon that insurer which first recognizes its obligations, while one neglectful of its duty is allowed to escape.

*American Surety Co. v. Canal Insurance Co.,* 258 F.2d 934, 937 (4th Cir. 1958). The primary insurer was Commercial, and it had the primary duty to defend. Like the principal claim represented by the *Blevins v. Roy* judgment, the legal expenses here contested are more properly borne by Commercial.

In a diversity case, the interpretation of the district court on a question of state law is entitled to great deference. *See Ideal Plumbing Co. v. Benco, Inc., supra.* With this principle in mind, and for the reasons stated above, we affirm the conclusion of the district court that Continental is entitled to recover the contested legal expenses from Commercial.

The judgment appealed from is affirmed in all respects. Blevins is awarded One Thousand Dollars ($1,000) for attorney's fees incurred on this appeal.

Affirmed.