SIMMONS FIRST NATIONAL BANK,
Administrator of the Estate of Georgia HUCHINGSON,
Deceased and Robert HUCHINGSON *v.*
LIBERTY MUTUAL INSURANCE COMPANY and
NORTHBROOK INSURANCE COMPANY

83-293                              667 S.W.2d 648

Supreme Court of Arkansas
Opinion delivered April 9, 1984
[Rehearing denied May 14, 1984.*]

*HICKMAN, J., would grant rehearing.

*Jack D. Ruple,* for appellant.

*Winslow Drummond, P.A.,* for appellees.

ROBERT H. DUDLEY, Justice. The appellants brought suit in Saline County against a partnership of doctors which provided anesthesiological services used in the administration of anesthesia during surgery and Airco, Inc., which manufactured an artificial breathing machine. Liability for compensatory damages was admitted both by the doctors and by Airco. The jury awarded compensatory damages of $1,070,000 against the doctors and Airco and punitive damages of $3,000,000 against Airco. Appellee Liberty was Airco's primary liability carrier with $2,000,000 in insurance coverage and appellee Northbrook was Airco's excess carrier

with $20,000,000 in coverage. The judgment was entered in Saline County on September 18, 1981. Airco's attorney had notice on September 18, of the entry of judgment.

On September 21, 1981, within ten days from the entry of judgment, Airco filed motions for a judgment notwithstanding the verdict and for a new trial. On October 19, 1981, the trial court denied both motions and ordered Airco to secure a supersedeas bond. The Judgment for compensatory damages was fully satisfied and, on October 26, 1981, a timely notice of appeal was given and on the next day, the 27th, the supersedeas bond was forwarded to the trial court in Saline County for approval.

On that same day, the 27th, the appellants filed this separate suit in Pulaski County contending that Ark. Stat. Ann. § 66-4001 (Repl. 1980) and Ark. Stat. Ann. § 66-3238 (Repl. 1980) entitled them to $360,000 as penalty, plus interest and attorney's fee.

On July 12, 1982, this court affirmed the judgment for punitive damages rendered in Saline County. *Airco, Inc. v. Simmons First National Bank*, 276 Ark. 486, 638 S.W.2d 660 (1982). The Saline County award of punitive damages was satisfied on August 2, 1982, by payment of the judgment, interest and costs.

On September 14, 1982, the Circuit Court of Pulaski County ruled that appellants were not entitled to the statutory penalty, interest and attorney's fee. We affirm. Jurisdiction rests in this court under Rules 29(1)(c) and (j).

Ark. Stat. Ann. § 66-4001 subrogates an injured party, or his or her personal representative, to the rights of an insured and, if the injured party recovers a judgment against the insured, and the judgment is unsatisfied thirty days from the entry of judgment, the injured party may sue the insurer directly. The statute does not mention an attorney's fee or a percentage penalty to be added to the claim. However, Ark. Stat. Ann. § 66-3238 provides a penalty of 12% and an attorney's fee will be added to recovery when an insurer, after demand, fails to pay for an insured loss within the time specified in the policy.

A party who prevails under the subrogation statute, § 66-4001, may, in some circumstances, be entitled to the statutory penalty and attorney's fee under § 66-3238. *Trinity Universal Ins. Co.* v. *Stobaugh*, 239 Ark. 746, 395 S.W.2d 24 (1965); *Blevins* v. *Commercial Std. Ins. Companies*, 544 F.2d 967 (1967). In *Blevins* and *Stobaugh*, the plaintiff sued the insurer following a judgment that went wholly unsatisfied against the insured. Significantly, the defendant insured did not appeal the initial judgment in either case. Here, the defendant timely pursued post-trial motions and then timely appealed the initial judgment. *See* Arkansas Rules of Appellate Procedure, Rule 4(a), (c) and (d).

The direct action statute, § 66-4001, gives an injured party a direct action against an insurer any time "such judgment remains unsatisfied at the expiration of thirty (30) days from the serving of notice of entry of judgment upon the attorney for the insured or upon the insured or upon the insurer." Under the literal interpretation of this statute urged by appellant, any time a defendant sought to appeal, without first satisfying the judgment, the insurer would be subject to a direct action for penalty, interest and attorney's fee. Other bizarre results would be reached under such interpretation. For example, assume that, on the thirty-first day after entry of judgment, the Saline County Circuit Court had granted the motion for judgment notwithstanding the verdict. The $3,000,000 judgment would have been unsatisfied for thirty days, and yet the appellants would be entitled to $360,000 penalty, plus interest and attorney's fee for not satisfying a judgment which had been set aside. The same outlandish result would have occurred if we had reversed the Saline County case and the statute alone was literally construed as appellants ask. Such an interpretation would not only cause preposterous results but could open the door to collusion. Suppose the insured judgment debtor was bankrupt. Appellants' suggested construction would enable the judgment debtor and the judgment creditor to delay a ruling on a post-trial motion and then appeal. More than thirty calendar days would have passed and the judgment creditor could reap a windfall penalty against an unsuspecting insurer.

This court gives effect to the intent of the General Assembly, even when the statute is not precisely worded. *Steele* v. *Murphy Trustee,* 279 Ark. 235, 650 S.W.2d 573 (1983). We do so with a common sense approach. *Keith* v. *Barrow-Hicks,* 275 Ark. 28, 626 S.W.2d 951 (1982). Common sense dictates that the General Assembly did not intend to impose a 12% penalty on an insurer for exercising its right to timely seek a new trial or timely obtain appellate review. Instead, the penalty nature of § 66-3238 is directed against unwarranted delaying tactics of insurers. Accordingly, we interpret the wording ". . . unsatisfied at the expiration of thirty (30) days from the serving of notice of entry of judgment . . ." to mean thirty days from the entry of final judgment as described by Rule 4 of the Rules of Appellate Procedure. This construction will make symmetrical the direct action statute and the Rules of Appellate Procedure.

Affirmed.

ADKISSON, C.J. and HICKMAN and HOLLINGSWORTH, JJ., dissent.

DARRELL HICKMAN, Justice, dissenting. The majority gives various examples of what could happen, if it followed the law, to justify its deviation from a principle of law that has been followed by us since we began making decisions. That is, we give a statute its plain meaning and do not "interpret" the language unless it is vague or uncertain. *Bank of Evening Shade* v. *Lindsey,* 278 Ark. 132, 644 S.W.2d 920 (1983); *Britt* v. *State,* 261 Ark. 488, 549 S.W.2d 84 (1977); *Cross* v. *Graham,* 224 Ark. 277, 272 S.W.2d 682 (1954); *Call* v. *Wharton,* 204 Ark. 544, 162 S.W.2d 916 (1942); *Johnson* v. *Lowman,* 193 Ark. 8, 97 S.W.2d 86 (1936); *Hopper* v. *Fagan,* 151 Ark. 428, 236 S.W. 820 (1922); *St. Louis, I.M. & S. Ry. Co.* v. *Waldrop,* 93 Ark. 42, 123 S.W. 778 (1909); *Wilson* v. *Biscoe,* 11 Ark. 44, 6 Eng. 44 (1850). The majority concedes the statute is clear in this case, and I feel we are duty-bound to follow it.

Ark. Stat. Ann. § 66-4001 (Repl. 1980) plainly states an insured "may maintain a direct cause of action against the insurer issuing such policy for the amount of the judgment

rendered against such insured, not exceeding the amount of the policy, provided such judgment remains unsatisfied at the expiration of thirty (30) days from the serving of notice of entry of judgment upon the attorney for the insured or upon the insured or upon the insurer."

I am not concerned with what might happen if we followed the statute; the fact is that the appellants did follow the statute. The appellees or their attorney overlooked the penalty and we should not avoid our duty to rectify the appellees' error.

A final judgment was entered in this case, notice was given, and there is no legal reason or other good reason to make a change in the statute. I would respectfully suggest that the majority is looking for what it conceives to be a favorable result rather than enforcing the plain and clear language of the statute, which is what we are bound to do. The first time we interpret a statute is the time to do it right. I would follow our cases and the statute and reverse the judgment.

ADKISSON, C.J. and HOLLINGSWORTH, J., join.